## Baranyai v. Csihas

*John P. Yatsko,* for plaintiff.

*John Rufe,* for defendant.

SCIRICA, J., September 28, 1971.—This is an equity proceeding in which plaintiff, Francis Baranyai, seeks to specifically enforce a parol agreement for the sale of real estate, and to direct defendants, Laszlo Csihas and Edith Csihas, to execute a deed conveying their interest in said real estate to plaintiff.

## FINDINGS OF FACT

1. In the spring of 1959, defendants, Edith Baranyai Csihas and her husband, Laszlo Csihas, signed an agreement of sale to buy the premises 2943 Penn Square Road, East Norriton Township, Montgomery County, Pa. for a consideration of $13,290.

2. In order to procure financing, they sought the aid of Edith's brother, Francis Baranyai, who agreed to become an obligor on the mortgage. His name was then added to the deed so that the deed and mortgage would conform.

3. The down payment and settlement expenses, totaling approximately $1,500, were furnished by plaintiff's father, who was also the father of the defendant-wife.

4. In August of 1959, defendants moved into the premises and remained there continuously until the following summer.

5. At this time, serious trouble erupted within the family and defendants expressed to plaintiff, Francis Baranyai, a desire to move to Philadelphia. They offered to convey their interest in the subject premises to him for $500.

6. Francis Baranyai accepted and gave defendants $350 in cash and forgave them a debt of $150.

7. Pursuant to this agreement, defendants vacated

the premises, and plaintiff took exclusive possession in September of 1961.

8. At this time, there was no urgency about reducing the agreement to writing. Plaintiff and defendant, Edith Csihas, are brother and sister; parties were friendly and trusted each other. They did, however, agree to have Beerer and Kratz Realtors prepare a deed confirming the transfer of all interest in the property to plaintiff, but the preparation of the deed was postponed.

9. In December of 1961, plaintiff received an assignment to work in Greenland; while he was gone; his wife continued to live in the premises; she remained until the following spring, and because of marital differences, decided to leave and go live with defendants.

10. In May of 1962, plaintiff took emergency leave from his job and returned to the premises, where he remained continuously until the fall of 1962. He then arranged for the rental of the premises.

11. During that summer, defendants took some action to have the conveyance and transfer reduced to writing. They engaged Arthur Kane, a realtor in Philadelphia, who prepared a deed and forwarded it to plaintiff for his signature.

12. Plaintiff, upon receiving the deed, became irate over the $100 stated consideration, and refused to sign it on the assumption that his sister and brother-in-law were demanding more money.

13. Defendants never returned to the premises after vacating it in 1961; never made inquiry about the premises, nor offered to share expenses, nor made any claim whatsoever consistent with ownership.

14. Defendants incurred no expenses other than the monthly mortgage payments of $91 during their term

of occupancy, which payments resulted in a reduction of the mortgage principal by approximately $200.

15. Plaintiff, however, paid all the mortgage installments, taxes, assessments and repair bills.

16. During his control and possession of the premises, he expended approximately $4,000 in excess of the rental income to keep the premises in good repair.

## DISCUSSION

Mr. Justice Woodward, in speaking for the court, in the case of Hart et al. v. Carroll, 85 Pa. 508 (1878):

"In order to take a parol contract for the sale of lands out of the operation of the Statute of Frauds, its terms must be shown by full, complete, satisfactory and indubitable proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust."

These rules were settled by a long line of prior decisions, many of which are cited in the opinion of Mr. Justice Woodward and have been recognized and approved in many late cases, among which may be mentioned Tetlow's Estate, 321 Pa. 305 (1936); Weller v. Potts, 230 Pa. 6 (1911); Morthland v. Altland, 78 York 85 (1967).

This court is of the opinion that the evidence produced by plaintiff has measured up to the high standards of proof made mandatory by a long line of cases.

Defendants cite Lincoln v. Africa, 228 Pa. 546 (1910), for the proposition that there can be no valid parol sale of lands among tenants in common possession, as there can be no such delivery of possession as will take the case out of the statute of frauds.

This is one of a line of cases which varies the language of the key phrase "among . . . tenants in common in possession," and "tenants in common in joint possession." It is probably not wise to define distinctions where there are none, but rather, the sense of these can be gotten from the cases in which they appear.

The concern of the courts is whether or not the fact of possession will tend to establish an executed contract. Simply when the purchaser was in possession prior to the sale, the fact that he is in possession after it is meaningless. Similarly, if he never took physical possession, there is no evidence of a sale.

Essentially, what the courts look for is a substantial change of circumstances which negate any transaction but a sale.

In the instant case, the parties, though tenants in common, were never in common possession. Thus, the facts show by full, complete and satisfactory proof that the parties entered into an oral agreement in 1959, and that there was an unequivocal change of possession made pursuant to the agreement which was notorious, exclusive, continuous and maintained.

The cases have uniformly held "that it may be accepted as a general rule that possession under a contract of sale and payment of the purchase price, will entitle the vendee to specific performance": Tressler's Estate, 66 Pa. Superior Ct. 547 (1917); Vittor et ux. v. Szymanski et ux., 321 Pa. 345 (1936); Tetlow's Estate (supra).

The court in Tetlow's Estate, supra, cited the case of Haslet v. Haslet, 6 Watts 464, in which the court

characterized as "an accurate exposition of the law" the language of the court below:

". . . that where money has been paid, and possession given in pursuance of a parol contract for the sale of land, equity will enforce the specific execution of the contract, on the ground that, to suffer a man who has received his money to take both money and land, by pleading the Statute of Frauds, would be making the statute itself the instrument of fraud, which it was made to prevent."

Accordingly, it is the opinion of this court that plaintiff has measured up to the high standard of proof required to take a parol agreement out of the statute of frauds and is entitled to specific performance of the contract.

## DECREE NISI

And now, September 28, 1971, it is ordered, adjudged and decreed as follows:

1. That plaintiff, Francis Baranyai, is entitled to specific performance of the contract for the sale of premises 2943 Penn Square Road, East Norriton Township, Montgomery County, Pa.

2. That defendants are enjoined and restrained from conveying, transferring, encumbering or otherwise disposing of or diminishing their interest in the aforesaid real property, except in accordance with this decree.

3. That defendants, Laszlo Csihas and Edith Csihas, his wife, shall execute, acknowledge and deliver to plaintiff, Frances Baranyai, a deed conveying all their right, title and interest in the aforesaid property; said deed shall recite a consideration of $500, which has been paid to defendants.

4. All costs of preparation, execution and filing the deed shall be paid by plaintiff.

5. Each party shall pay their own court costs.

6. In the event defendants refuse to execute a deed as provided herein within 60 days of the final decree, the prothonotary is directed to execute said deed on behalf of defendants.

7. The prothonotary, in accordance with the rules of civil procedure, shall give notice to counsel of the filing of this adjudication, and unless exceptions are filed within 20 days of such notice, this decision will become the final decree upon filing of a praecipe.